UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LINDA DUDLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:11-CV-0028-G |
| SEDGWICK CLAIMS MANAGEMENT ) | |
| SERVICES, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Before the court are opposing motions for summary judgment filed by the defendant, Sedgwick Claims Management Services, Inc. ("Sedgwick") (docket entry 9), and the plaintiff, Linda Dudley ("Dudley") (docket entry 12). For the reasons set forth below, the defendant's motion is granted, and the plaintiff's motion is denied.

I. BACKGROUND

A. Factual Background

This suit challenges the decision of an administrator of an employee benefits plan to deny short-term disability ("STD") benefits to an employee. The plan is

governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq*.

Dudley is an employee at the Southwestern Bell Telephone Company ("SWBT"). Defendant Sedgwick Claims Management Services, Inc.'s Brief in Support of Motion for Summary Judgment ("Defendant's Brief") at 2 (docket entry 10). Sedgwick was the third party administrator that handled Dudley's claim for benefits. *Id.* at 3.

Dudley began working at SWBT in February of 2000. *Id.* at 2. In December of 2009, Dudley was still employed with SWBT as a "directory composer." *Id*. at 2-3. Dudley's job as a directory composer is "sedentary work in which any movement from her desk was both occasional and limited in nature[.]" *Id*. at 3.

As an employee at SWBT, Dudley was a participant in the AT&T Disability Income Program for Southwest Bargained Employees (the "AT&T DIP" or "plan").[1] *Id.* at 1, 3. The AT&T DIP provides qualified employees like Dudley with welfare benefits, including benefits for short-term and long-term disability. *Id*. at 3. An employee will receive STD benefits for "[a]ny disabling condition medically substantiated and treated by a Physician that renders an employee incapacitated from performing the duties of any job assigned by the Participating Company." *See*

---

[1] All of the documents concerning the AT&T DIP appear to be part of a "summary plan." Because the court does not believe that this materially affects the case, the court will still refer to all such documents as "the plan."

Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response") at 1-2 (docket entry 15); *see also* Appendix to Defendant Sedgwick Claims Management Services, Inc.'s Brief in Support of Motion for Summary Judgment ("Defendant's Appendix") at 386 (docket entry 11).

Sedgwick is the third-party claims and appeals administrator for the AT&T DIP. Defendant's Brief at 18. As a result, "Sedgwick [was] vested with full discretionary authority to determine eligibility for benefits, to construe the terms of the AT&T DIP, and to decide any and all appeals relating to claims by participants or beneficiaries." *Id*; *see also* Defendant's Appendix at 390 ("[T]he third-party . . . will have sole discretion to interpret the Program, including, but not limited, to interpretation of the terms of the Program, determinations of coverage and eligibility for benefits, and determination of all relevant factual matters.").

In order to determine whether an employee is eligible for STD benefits, the plan requires Sedgwick to review the employee's relevant "medical documentation." Plaintiff's Response at 2; *see also* Defendant's Appendix at 387. Medical documentation "includes, but is not limited to, medical, psychiatric or psychological opinion from the treating or reviewing Physician that is supported by diagnostic tools and examinations, which are performed in accordance with the generally accepted [principles] of the health care profession." *Id*.

Dudley had a history of arthritis and pain in her knees. Defendant's Brief at 3. On December 15, 2009, Dudley underwent arthroscopic surgery on her knees, which was performed by David Liao, D.O. *Id*. On that same day, Dudley made a claim to Sedgwick for short-term disability benefits under the AT&T DIP for her rehabilitation. *Id.*

On December 22, 2009, Sedgwick received medical records from Dr. Liao concerning Dudley's surgery. *Id*. at 4; *see also* Defendant's Appendix at 117-25. These records stated that Dudley tolerated the procedure "well and returned to the recovery room in excellent condition." *Id.*; *see also* Defendant's Appendix at 125. The records also stated that Dudley was not to return to work "until further notice pending follow-up [appointment]," and that she should do "no standing, stooping, lifting, or pushing until further notice." Defendant's Appendix at 117. Based on these materials, Sedgwick approved Dudley's claim for STD benefits from December 15, 2009 to January 3, 2010. Defendant's Brief at 4; *see also* Defendant's Appendix at 11-12. This provided Dudley with twenty days of post-operative leave. *Id*.

After January 3, 2010, Sedgwick received a series of reports on the status of Dudley's rehabilitation. On January 4, 2010, Dr. Liao sent Sedgwick a Physical Capacity Evaluation of Dudley's condition. *Id*. at 5; *see also* Defendant's Appendix at 136. In this evaluation, Dr. Liao again stated that Dudley should not be "standing,

stooping, lifting, or pushing until further notice," and that she was not able to work "until further notice." *Id.*

On or around January 6, 2010, Dudley's medical records were sent to Dr. Xico Garcia, a third-party physician advisor, for review. Defendant's Brief at 5. Dr. Garcia stated that "[f]unctional impairment based on objective findings has not been substantiated for this employee's sedentary job occupation as a directory composer during the review period from 1/4/10 forward." *Id.*; *see also* Defendant's Appendix at 21.

After reviewing the reports that it had received, Sedgwick notified Dudley on January 13, 2010 that her STD claim had been denied effective January 4, 2010. Defendant's Brief at 6. Sedgwick explained that there was "insufficient clinical evidence to support incapacity and inability to engage in your occupational duties." See *Id.*; *see also* Defendant's Appendix at 180. Attached to its denial letter, Sedgwick provided the following information:

> "If you are including medical evidence in your appeal, you or your treatment provider must submit the following:
>
> • A clear outline of your level of functionality
>
> • A description of how your level of functionality impacts your ability to work and perform your daily activities
>
> • A detailed description of the treatment provider's rationale for your level of functionality

> • Clinical documentation that supports the
> treatment provider's rationale"

Defendant's Brief at 6; *see also* Defendant's Appendix at 183.

On January 16, 2010, Sedgwick received records from Texas Health Presbyterian Hospital in Rockwall. Defendant's Brief at 7; *see also* Defendant's Appendix at 187-90. These records stated that Dudley was being treated for cellulitis, which is an infection of the skin. Defendant's Brief at 7 and n.3. The evaluating doctor stated in his discharge instructions that Dudley should not perform "strenuous activity," but could "walk and bear weight as tolerated." *Id*. at 7; *see also* Defendant's Appendix at 187. Three days later, on January 19, 2010, Sedgwick again sent Dudley a letter, which again informed her that these new records still provided no clinical evidence that would support her STD claim. *Id.*; *see also* Defendant's Appendix at 191.

After January 19, 2010, Dr. Liao and Sedgwick continued to communicate about Dudley's condition. *Id*. at 7-8. A January 22, 2010 letter from Dr. Liao explained that he advised Dudley to avoid driving and stay off of work to reduce swelling and the possibility of a blood clot. *Id*. at 7; *see also* Defendant's Appendix at 199. The letter also stated that Dudley was experiencing significant pain in her knee, and that she had gone to the emergency room for this pain a few days prior. *Id*. On January 28, 2010, Dr. Liao called Sedgwick and said that Dudley was having "significant, incapacitating pain [with] limping, as she is using a cane." *Id*. at 8; *see*

*also* Defendant's Appendix at 48.  On January 29, 2010, Sedgwick received both a fax from Dr. Liao and a call from his office, both of which indicated that Dudley was not working due to pain.  Defendant's Brief at 8-9.  After each of these communications, Sedgwick always concluded that there still was not enough clinical evidence to support her STD claims.  *Id*. at 9.

On February 9, 2010, Dudley came into Dr. Liao's office, where she stated that her knee "still gives her quite a few problems."  *Id*. at 9; *see also* Defendant's Appendix at 221.  Dudley expressed concern that she would be unable to work while taking her medication, and that she would be unable to drive to and from work.  *Id*.  As a result, Dr. Liao continued to recommend that she should not go in to work.  *Id*.  Dr. Liao also indicated that, because he had exhausted all conservative treatment options, a total knee replacement might be necessary.  *Id*.

On March 4, 2010, Dudley received a total knee replacement at the Hunt Regional Medical Center.  Defendant's Brief at 9.  After this second surgery, Sedgwick granted Dudley's request for STD benefits from March 4 to April 14, 2010.  *Id.* at 9-10; *see also* Defendant's Appendix at 69.

On April 6, 2010, Sedgwick received records from Rehab Management, which detailed Dudley's physical therapy treatment since her total knee replacement.  Defendant's Brief at 10.  In these records, a letter from a physical therapist stated that Dudley had been using a walker and a cane, had experienced "some numbness in

her leg and burning and hypersensitivity around her left knee," and a desire to return to work around April 15. *Id.*; *see also* Defendant's Appendix at 237-38.

On April 12, 2010, Dudley filed a written appeal with Sedgwick for the denial of her STD benefits. *Id.* at 10; *see also* Defendant's Appendix at 239-41. After the filing of the appeal, Sedgwick continued to receive updates on Dudley's physical therapy treatment from Rehab Management, as well as medical records from Dr. Liao. Defendant's Brief at 11. In these records, Dr. Liao summarized Dudley's medical care in the time leading up to her total knee replacement, and continued to recommend that Dudley remain off work. *Id*. After receiving these updates, Sedgwick again maintained that these records "failed to indicate how Dudley was functionally incapacitated from prolonged sitting activities in her sedentary job position." *Id*. On April 26, 2010, Dudley returned to her job at SWBT. Defendant's Brief at 14.

On May 19, 2010, Sedgwick sent Dudley's STD claim to two independent Physician Advisors: Dr. Jamie Lee Lewis and Dr. Allan Michael Brecher. *Id*. at 11-14; *see also* Defendant's Appendix at 276-82, 293-96. Dr. Lewis and Dr. Brecher are both specialists in orthopedic surgery, physical medicine and rehabilitation. *Id*. On May 25, 2010, after having reviewed Dudley's file, both doctors came to the conclusion that Dudley was not disabled from January 4, 2010 to March 3, 2010, and April 15, 2010 to the date of their reports. *Id*. at 11-14.

In both of their reports, Dr. Lewis and Dr. Brecher cited the findings that supporter their conclusions. *Id*. For example, Dr. Lewis wrote:

> "The clinical findings include tenderness over the knee and some reduction in range of motion noted in the knee. There is no documentation of active instability of the knee noted during the time frames in question. Imaging study evidence of multifactorial degenerative changes about both knees was also noted. The findings would not impact the employee's ability to function."

*Id*. at 12; *see also* Defendant's Appendix at 277.

Likewise, Dr. Brecher wrote:

> "The patient had knee arthritis based on imaging, and arthroscopy done on 12/15/09 and knee replacement done on 03/04/10. On 12/29/09, her arthroscopy wounds looked good and she had started physical therapy. Based on this note, she could return to work, which would be reasonable 2 weeks following arthroscopy. Following the knee replacement, a progress note dated 04/01/10 notes she is ambulatory with a cane. There is no joint effusion, and she is starting ROM exercises. There are no findings noted which would impact her ability to function in her sedentary job."

Defendant's Appendix at 281.

Subsequently, Dudley requested additional STD benefits from May 6, 2010 to May 23, 2010 in connection with a scheduled "manipulation" of her knee, which Sedgwick granted. Defendant's Brief at 14. On May 24, 2010, Dudley made her final return to work.

On June 17, 2010, Sedgwick denied Dudley's appeal. *Id.*; *see also* Defendant's Appendix at 301-03. In its denial letter, Sedgwick referenced the evaluations of Dr. Lewis and Dr. Brecher as the basis for denial of STD benefits. Defendant's Appendix at 302. Specifically, Sedgwick wrote:

> "Although some findings are referenced, none are documented to be so severe as to prevent you from performing the duties of your job as a Directory Composer, with or without reasonable accommodations from January 4, 2010 through March 3, 2010 and from April 15, 2010 through April 25, 2010."

*Id.*

Therefore, the parties' dispute concerns only Sedgwick's denial of Dudley's STD benefits from January 4, 2010 to March 3, 2010, and April 15, 2010 to April 25, 2010. Defendant's Brief at 10-11.

### B. Procedural Background

Dudley brought this case against Sedgwick for wrongful denial of benefits under 29 U.S.C. § 1132(a)(1)(B). She filed the suit on November 30, 2010 in the County Court at Law No. 2 of Dallas County, Texas. Defendant's Brief at 14. Sedgwick filed its notice of removal to this court on January 5, 2011. *Id.*; *see also* Defendant's Notice of Removal (docket entry 1).

Both Dudley and Sedgwick now move for summary judgment. Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[] that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a), (c)(1).[2] A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is '*genuine*' if it is real and substantial, as opposed to merely formal, pretended, or a sham."). To demonstrate a genuine issue as to the material facts, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986). The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in its favor. *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 158-59 (1970)). However, it is not

---

[2] Disposition of a case through summary judgment "reinforces the purpose of the Rules, to achieve the just, speedy, and inexpensive determination of actions, and, when appropriate, affords a merciful end to litigation that would otherwise be lengthy and expensive." *Fontenot v. Upjohn Company*, 780 F.2d 1190, 1197 (5th Cir. 1986).

incumbent upon the court to comb the record in search of evidence that creates a genuine issue as to a material fact.  See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).  The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts.  *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986).  "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

## II.  ANALYSIS

### A.  Legal Standard

29 U.S.C. § 1132(a)(1)(B) allows the beneficiary of a benefits plan to bring a civil action "to enforce [her] rights under the terms of the plan."

In the Fifth Circuit, an ERISA "plan administrator's factual determinations are always reviewed for abuse of discretion." *Vercher v. Alexander & Alexander Inc.*, 379 F.3d 222, 226 (5th Cir. 2004).  However, "its construction of the meaning of plan terms or plan benefit entitlement provisions is reviewed *de novo* unless there is an express grant of discretionary authority in that respect, and if there is such then review of those decisions is also for abuse of discretion." *Id*.

Courts in the Fifth Circuit "employ a two-step analysis in determining whether a plan administrator abused its discretion in construing plan terms." *Vercher*, 379

F.3d at 227 (citing *Rhorer v. Raytheon Engineers and Constructors, Inc.*, 181 F.3d 634, 639 (5th Cir. 1999)). The court must first "determine the legally correct interpretation of the plan and whether the administrator's interpretation accords with the proper legal interpretation." *Id*. "If the administrator's construction is legally sound, then no abuse of discretion occurred and the inquiry ends. . . . However, if the court concludes that the administrator has not given the plan the legally correct interpretation, the court must then determine whether the administrator's interpretation constitutes an abuse of discretion." *Id*. at 227-28.

A plan administrator abuses its discretion -- in either the factual determination or plan construction context -- if it acts arbitrarily or capriciously. *Meditrust Financial Services Corporation v. Sterling Chemicals, Incorporated*, 168 F.3d 211, 214 (5th Cir. 1999) (citing *Wildbur v. ARCO Chemical Company*, 974 F.2d 631, 635 (5th Cir. 1992)) ("[T]here is only a 'semantic, not a substantive, difference' between the arbitrary and capricious and the abuse of discretion standards in the ERISA benefits review context."). "A decision is arbitrary only if 'made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" *Id*. at 215 (citing *Bellaire General Hospital v. Blue Cross Blue Shield*, 97 F.3d 822, 828-29 (5th Cir. 1996)).

When reviewing the administrator's decision for arbitrary and capricious actions resulting in an abuse of discretion, the court should affirm the administrator's

decision if it is supported by "substantial evidence." *Id*. "Substantial evidence is more than an scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Anderson v. Cytec Industries, Inc.*, 619 F.3d 505, 512 (5th Cir. 2010) (citing *Corry v. Liberty Life Assurance Company of Boston*, 499 F.3d 389, 398 (5th Cir. 2007)).

"Finally, the court must take into consideration the conflict of interest inherent in a benefits system in which the entity that pays the benefits . . . maintains discretionary control over the ultimate benefits decision." *Anderson*, 619 F.3d at 512 (citing *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105, 112 (2008); *Holland v. International Paper Company Retirement Plan*, 576 F.3d 240, 247 n.3 (5th Cir. 2009)).  This is done by weighing "the structural conflict as one of the many factors relevant to the benefits determination decision." *Id*.  However, this conflict of interest will not be a significant factor a case where the plaintiff has not come forward with any evidence that the conflict influenced the benefits decision, the employer employed a third-party benefits administrator, and the administrator consulted independent experts in reviewing the claim.  See *id*.

B.  <u>Application</u>

Under Section 1132(a)(1)(B), the claimant bears "the initial burden of demonstrating that the denial of benefits under an ERISA plan" was an abuse of discretion.  See *Anderson*, 619 F.3d at 512-13 (internal changes omitted).  Because

Sedgwick was expressly granted the authority to interpret the plan, both its factual determinations and its construction of the plan will be reviewed for an abuse of discretion.  *See* Defendant's Brief at 18-19.

1. *Factual determinations*

In this case, Sedgwick did not abuse its discretion by determining that Dudley's condition did not constitute a disability from January 4, 2010 to March 3, 2010, and April 15, 2010 to April 25, 2010.  In denying Dudley's appeal, Sedgwick relied on the reports of Dr. Lewis and Dr. Brecher, who determined that Dudley did not present sufficient objective, clinical evidence that her condition would have prevented her from performing her sedentary work duties.  Defendant's Brief at 11-14; *see also* Defendant's Appendix at 276-82; 293-96.

Furthermore, Sedgwick did not deny Dudley's claims for STD benefits wholesale.  Since Dudley's first procedure at the end of 2009, Sedgwick approved STD benefits for Dudley on three separate occasions:  (1) December 15, 2009 - January 3, 2010 (arthroscopic surgery), (2) March 4, 2010 - April 14, 2010 (knee replacement), and (3) May 6, 2010 - May 23, 2010 (knee manipulation).

It is true that Dr. Lewis and Dr. Brecher's opinions regarding Dudley were in direct conflict with the opinions of Dr. Liao, who recommended that Dudley stay off work for the times in question.  However, "[t]he Supreme Court has held that 'plan administrators are not obliged to accord special deference to the opinions of treating

physicians.'" *Gothard v. Metropolitan Life Insurance Company*, 491 F.3d 246, 249 (5th Cir. 2007) (citing *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 831 (2003)). As a result, the Fifth Circuit has held, "an administrator does not abuse its discretion when it relies on the medical opinion of a consulting physician whose opinion conflicts with the claimant's treating physician." *Gothard*, 491 F.3d at 249; see also *Corry*, 499 F.3d at 401 ("In this battle of the experts the administrator is vested with discretion to choose one side over the other.") (internal citation omitted). "This is so even if the consulting physician only reviews medical records and never physically examines the claimant, taxing to credibility though it may be." *Gothard*, 491 F.3d at 249.

Dudley argues that Sedgwick abused its discretion by ignoring or discounting Dudley's complaints of pain. However, Sedgwick's denial of appeal letter expressly mentions the "continued pain" that Dudley reported leading up to her knee replacement on March 4, 2010. Defendant's Appendix at 302. Moreover, the reports submitted by Dr. Lewis and Dr. Brecher show that they considered these complaints in making their evaluations for her appeal. Defendant Sedgwick Claims Management Services, Inc.'s Response to Plaintiff's Motion for Summary Judgment ("Defendant's Response") at 20-21 (docket entry 18). For example, the "Orthopedic Synopsis" in Dr. Brecher's report notes a number of Dudley's complaints concerning pain. Defendant's Appendix at 280. Likewise, Dr. Lewis' report states that Dudley

- 16 -

experienced "different" pains both before and after her knee replacement surgery. Defendant's Appendix at 277. Notwithstanding the difficulty that any doctor has in evaluating the pain experienced by an individual, there is no evidence that Sedgwick "ignored" Dudley's pain. *Cf.* Brief in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Brief") at 37 (docket entry 13).

Dudley also argues that Sedgwick abused its discretion in making a factual determination in her case because it asked an "inappropriate" question of Dr. Lewis and Dr. Brecher. Plaintiff's Brief at 33-34. According to Sedgwick's claim manual, "it is 'inappropriate' to ask a physician advisor questions such as 'Is the [employee] disabled?' and 'Can the employee do [her] job?'" *Id.* at 34; *see also* Appendix in Support of Plaintiff's Motion for Summary Judgment ("Plaintiff's Appendix") at Exhibit D, at 50 (docket entry 14). However, Sedgwick asked both Dr. Lewis and Dr. Brecher the following question: "Was [Dudley] disabled from her regular job as of 01/04/10 through 03/01/10, and 04/15/10 through present?" Defendant's Appendix at 277, 280.

Nevertheless, the court does not believe that this lapse constitutes an abuse of discretion. The alleged inappropriate question was just one of several asked of the physician advisors. *See* Defendant's Response at 8 n.5. Moreover, this question likely did not prejudice Dr. Lewis and Dr. Brecher against Dudley, since it should have been obvious to them that they were reviewing these records to answer this exact

question. When read as a whole, the reports submitted by Dr. Lewis and Dr. Brecher contained sufficient information and analysis to provide Sedgwick with a sound basis for rejecting Dudley's appeal.

2. *Construction of the plan*

Furthermore, Sedgwick's interpretation of the AT&T DIP was legally correct. The plan provides STD benefits to a covered employee for "[a]ny disabling condition medically substantiated and treated by a Physician." Plaintiff's Response at 1-2; *see also* Defendant's Appendix at 386. "The summary plan description only required such disability to be supported by medical documentation that included opinions from a treating physician, supported by 'diagnostic tools and examinations, which are performed in accordance with the generally accepted [principles] of the health care profession.'" Plaintiff's Response at 2 (*quoting* Defendant's Appendix at 387).

Dudley argues that Sedgwick's plan construction was legally incorrect because it imposed a "no objective finding" standard on Dudley's claim. Brief in Support of Plaintiff's Response to Defendant's Motion for Summary Judgment ("Plaintiff's Response Brief") at 3 (docket entry 16). For example, Sedgwick relied on Dr. Brecher's written review of Dudley's claim, which stated that there were "no objective findings noted" that would have prevented her from doing her job. *See* Plaintiff's Brief at 9; *see also* Defendant's Appendix at 281. Instead, Dudley argues that Sedgwick should have approved her claim because her condition was "medically

substantiated" by the records that Sedgwick received from her health care providers. Plaintiff's Brief at 30.

It is clear that a plan administrator cannot "vary or limit the terms described in" a benefits plan. *Hansen v. Continental Insurance Company*, 940 F.2d 971, 982 n.8 (5th Cir. 1991). However, Sedgiwck did not impose a different requirement on Dudley by requiring her to provide some form of objective proof. The Fifth Circuit has explained that "[a] plan administrator does not abuse its discretion by making a reasonable request for some objective verification of the functional limitations imposed by a medical or psychological condition, especially when the effects of that condition are not readily ascertainable from treatment and therapy notes." *Anderson*, 619 F.3d at 514. Likewise, the Eighth Circuit has found it reasonable to interpret the requirement of "satisfactory documentation" to "require provision of objective evidence as part of the 'proof' and 'documentation' that a claimant must submit." *Pralutsky v. Metropolitan Life Insurance Company*, 435 F.3d 833, 839 (8th Cir.), *cert. denied*, 549 U.S. 887 (2006); see also *Maniatty v. Unumprovident Corporation*, 218 F. Supp. 2d 500, 504 (S.D.N.Y. 2002) ("While plaintiff argues that the plan itself does not state that objective evidence is necessary to establish disability, the plan does state that "proof" of continued disability must be provided . . . and the very concept of proof connotes objectivity. . . . [I]t is hardly unreasonable for the administrator to

require an objective component to such proof."), *aff'd*, 62 Fed. Appx. 413 (2nd Cir.), *cert. denied*, 540 U.S. 966 (2003).

Because Sedgwick's interpretation of the AT&T DIP was legally sound, this court does not need to engage the abuse of discretion step of the analysis.

### III.  CONCLUSION

For the reasons stated above, the defendant's motion for summary judgment is **GRANTED**, and the plaintiff's motion for summary judgment is **DENIED**. Judgment will be entered for the defendant. Within ten days of this date, counsel for the defendant shall submit a proposed form of judgment in conformity with this opinion.

**SO ORDERED**.

October 24, 2011.

*/s/ A. Joe Fish*
**A. JOE FISH**
**Senior United States District Judge**